9280

INTERNATIONAL HARVESTER CO. OF AMERICA v. MONROE
BANKING & MERCANTILE CO. *ET AL.*

(87 S. E. 1012.)

CONTRACTS.    MORTGAGES.    EQUITY.    ACTIONS.

1. CONTRACTS — MORTGAGES. — Where parties agreed, one to give, the other to accept, a mortgage, without expressly referring to dower, and after the mortgage was prepared and signed the mortgagee demanded a renunciation of dower thereon, which was refused, he did not, through demand for renunciation of dower, forfeit his right to mortgage contracted for.

2. MORTGAGES—ACTIONS.—Where during the pendency of an action to require the defendant to deliver a mortgage pursuant to contract, the debt thereby secured matures and becomes payable, the mortgagee is entitled not only to have mortgage established, but also to a decree of foreclosure.

Before HON. M. F. ANSEL, special Judge, Greenville, June, 1915.    Reversed.

Action by International Harvester Company of America against Monroe Banking & Mercantile Company and R. A. Monroe.    From decree dismissing complaint, the plaintiff appeals.

*Messrs. Haynsworth & Haynsworth,* for appellant, submit: *The contract was completely executed:* 2 Strob. Eq. 370; 42 Am. Dec. 439; 64 Am. Dec. 147, 151; 16 Am. Dec.

FOOTNOTE.—See note in 6 L. R. A. (N. S.) 585, as to specific performance of contract to give security.

42. *The plaintiff is entitled to the aid of the Court in obtaining the full benefit of that contract:* 1 Speer's Eq. 413, 417; 2 Hill Eq. 421; *Ib.* 167; 3 DeS. 74; 2 DeS. 564; 75 S. C. 25; 27 Cyc. 985; 26 S. C. 136; 3 Elliott, Contracts, sec. 2315; 39 Am. St. Rep. 776, 780; 3 Pom. Eq. Juris. 1237; 9 Cyc. 588; 39 Cyc. 1297; 2 Strob. L. 86; 77 S. C. 64; 69 S. C. 370; 6 Rich. Eq. 284; 134 Am. St. Rep. 982, 985; 107 N. W. 256, 258; 39 Atl. 433, 434; 68 Atl. 420; 56 Ill. 219, 227.

*Messrs. Towns & Earle,* for respondent, cite: 68 S. C. 440; 101 S. C. 170.

. February 29, 1916.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

The action is in equity, and is to require the defendant to deliver to the plaintiff a mortgage on land, and for the establishment thereof.

The judgment below, of both master and Court, was for the defendant, and the plaintiff has appealed.

The transaction was had in the fall of 1914, when the country was almost in the throes of bankruptcy incident to the great war.

At that time the defendant owed the plaintiff three thousand dollars and could not pay, and the plaintiff was pressing for payment.

The parties then made a parol contract, whereby the plaintiff was to get security and the defendant was to get a year's time in which to pay the debt.

This suit is about those terms and the performance of them.

The defendants got the time; the plaintiff got only a part of the security.

The master found: (1) That, for an extension of credit granted to the defendant by the plaintiff, R. A. Monroe,

among other things agreed to give the mortgage, and the mortgage was actually signed by him; (2) that the mortgage was never delivered, but was kept by Monroe for the purpose which he had of having his wife renounce dower; (3) that the plaintiff at first declined to accept the mortgage without a renunciation of dower; (4) that the defendant, Monroe, had the legal right to refuse a delivery of the mortgage without the dower renounced; (5) and that though the plaintiff was subsequently willing to take it so.

The Circuit Court found: (1) That Monroe only agreed to deliver a mortgage with dower renounced, and (2) that the defendant first refused to accept any other, and (3) that the two contracting parties did not agree, the one to deliver and the other to accept an unrenounced mortgage; and, therefore, they came to no common ground of agreement.

The exceptions are five; they need not to be stated; they put in issue those conclusions of fact and of law reached by the master and Court.

About some things done there is really no issue betwixt the parties. They are these:

At the time in question, the fall of 1914, the plaintiff held nine past due notes of the defendant, aggregating some $3,000.00, which defendant could not pay. For these, and in the place of them, the defendant then executed to the plaintiff two notes payable a year hence, in the fall of 1915. That was plaintiff's part of the contract, and it was performed. The two new notes were executed by the defendant and received by the plaintiff.

Therefor the defendant agreed to do the three things, and two of them it did, to wit: It made the trust deed of acknowledgment, and it delivered to the plaintiff certain customers' notes which had been made to the defendant.

The third thing which the defendant promised to do in order to secure the extension, was to execute to plaintiff a mortgage on land.

It proceeded so far about that matter as to sign the instrument before two witnesses.

Had the paper so prepared been then actually put into the plaintiff's hands and by it accepted, the whole transaction would have been executed and ended. There is no question about that. Why ought not the instrument, as it was executed, to be now delivered?

The plaintiff performed its part of the contract, the defendant did so in part, why not wholly?

The burden was on the plaintiff to show why the defendant should wholly perform and we think it has discharged the duty.

The contract to give the mortgage rested in parol. It nowhere directly appears from the testimony of either side that the plaintiff, when the contract was made, exacted a mortgage with dower renounced; or that the defendant agreed to give such a mortgage. So far as the words of the witnesses go, dower was not mentioned.

The inchoate right of dower abode in the wife, and it was hers alone to contract about.

The only contract proven was that the defendant agreed with the plaintiff to execute to it a mortgage on this land.

Such an instrument was actually signed; the defendant, with a verbalism that suggests art, admits that it was "signed," but not "executed."

Manifestly, if the agreement was for such a mortgage as that which was made, then the plaintiff is now entitled to have it, unless it has done some act to forfeit its right.

The plaintiff strongly contends that the paper was not only signed, but delivered into its hands, and is now constructively there. We think the master might well have so concluded from the testimony; but we deem it not necessary to disturb his conclusion thereabout, concurred in by the Court.

The master thought there was no delivery.

The demand for a renunciation of dower, alleged to have been made by the plaintiff, was certainly made after the making of the contract for a mortgage, and on a day subsequent and when the paper was signed by the defendant.

The testimony of both sides makes that plain; there is none to the contrary.

And the testimony of Monroe proves that when he signed he was ready then to deliver. It is true, he testified this on the direct examination:

"Q. Did you offer him paper without dower? A. No. Q. And you never did offer to give him paper without dower? A. No, sir. Q. Did you use the word 'executed' or the word 'signed?' A. Sign. Q. At all times? A. Yes."

But on the cross-examination the defendant testified this:

"Q. So you agreed to give him this mortgage? A. Yes. Q. When you signed it you intended to give him the mortgage? A. Yes. Q. When did you decide not to give it to him? A. When my wife said she would not sign dower. Q. When was the first time that you refused to give mortgage to Mr. Luther? A. I cannot tell the day. Q. When Mr. Luther finally told you that he would take the mortgage as it stood, why didn't you give it to him? A. Why didn't I? Q. Yes; why didn't you give it to him then? A. Well, I changed my mind. Q. You told him at first that you would. You promised to give it? A. I did if my wife would sign it. Q. Why did you change your mind when you had agreed to give it to him? A. Why I changed my mind. I offered to give him back the stuff and he would not take it. Q. Why did you refuse to give the mortgage without dower? A. For several reasons. I changed my mind, and did not intend to give it to him then. I offered to give back stuff and pay freight."

We think it is manifest that when the plaintiff at the signing asked for a renunciation of the dower, the defendant hung on that request the opportunity it offered to defeat the performance of a part of his contract with the plaintiff.

The only reason assigned by respondents' counsel for the defendant to give a renounced mortgage is, that in the event of a sale of the land under the mortgage, the price of it would be enhanced.

We are of the opinion that the parties agreed, the one to give and the other to accept, a mortgage; and that at that time they were not expressly mindful of the matter of dower; that at a subsequent day, when the instrument had been prepared by the plaintiff and was signed by the defendant, the defendant engrafted on the contract a demand for a renunciation of dower, and to which it was not entitled under the contract; that the wife, who had the right, refused to renounce it.

But we are of the opinion that the engrafted demand of the plaintiff for a renunciation, and in its absence for additional security, did not operate to defeat the plaintiff's right to have the instrument that was made pursuant to the contract made aforetime. Reverse the attitude of the parties.

Had the plaintiff refused ultimately to accept the mortgage; had it returned to the defendant the trust deed and the collateral notes it had taken; had it returned to the defendant the two new notes the defendant had made to it for the nine past due notes, and had it demanded prompt payment of the nine notes, the defendant would then have been within its rights to insist upon the performance of the parol contract into which the parties had first entered, and about which there is no doubt.

If that be so, and it must be, then the plaintiff now has the right which is reciprocal to that, and which is set up in this action.

The complaint did not demand a foreclosure of the mortgage, but only its establishment; it was not due when the action was brought; it is now due; and the plaintiff is entitled to have the mortgage established and also to have a decree of foreclosure.

Our judgment is that the decree of the Circuit Court be reversed, and the cause remanded to that Court to carry out the views here expressed.

It is so ordered.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES HYDRICK and FRASER concur in the opinion announced by MR. JUSTICE GAGE.

MR. JUSTICE WATTS, *dissenting.* I dissent. I think the judgment should be affirmed, as the master and Circuit Judge were right.